IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KERI KING, | ) | CASE NO. 5:12 CV 1709 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| DALE ALEXANDER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OPINION</u> |

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF #28). Plaintiff, Keri King, filed a response to the Defendants' Motion, and Defendants filed a Reply in support of their request. (ECF #31, 32). Defendants claim that Plaintiff has provided insufficient evidence to sustain the burden of proof on her claim for deliberate indifference. For the reasons set forth below, the Court agrees with Defendants' position. Defendants' Motion for Summary Judgment is, therefore, GRANTED.

**<u>Summary Judgment Standard</u>**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. The moving party need not introduce affirmative evidence to refute a non-moving

-2-

party's claims, unless and until the non-moving party had presented sufficient evidence to support their claims. *See, Celotex*, 477 U.S. at 324.

Once the moving party has satisfied its burden, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

### Facts

The parties agree that Plaintiff, Keri King, suffered serious burns in an accident that occurred at her home in March of 2010. This accident did not involve any of the Defendants in this action. As a result of these burns Plaintiff contends that she developed osteomyelitis, which eventually led to the amputation of her left ring finger. This also occurred before she encountered any of the Defendants in this case. In July of 2012, Ms. King was incarcerated at the Summit Count Jail. While incarcerated, in August of 2010, Ms. King was admitted to Akron Children's Hospital where she was subjected to an additional operation amputating her left hand pinky finger.

Ms. King has submitted an affidavit testifying to the following alleged facts:

(1) When she was discharged from the hospital where she was originally treated for the burns, and diagnosed with osteomyelitis,  she "was instructed to keep [her] burns dressed at all times, to change [her] dressings more than once per day, and to use the pre-medicated dressing that [she] had been given by the hospital."  (ECF #31-1, ¶ 2).

(2) In April of 2010, the osteomyelitis had not improved and her left ring finger was amputated.  "On being discharged from the hospital after the amputation, [she] was again instructed about dressing my burns, changing the dressings multiple times per day, and using pre-medicated material."  (ECF #31-1, ¶ 3).

(3) After the amputation her condition improved.  She was told by late June 2010 that the "osteomyelitis was gone."  (ECF #31-1, ¶ 4).

(4) She testified that around this time "the dressing of [her] wounds did not change."

-4-

Prior to entering the jail, she "kept the burns dressed, changed the dressings more than one time per day, and used pre-medicated dressing material." (ECF #31-1, ¶ 4).

(5) When she entered the Summit County Jail in July 2010, "[she] had no symptoms of infection or any other complications from [her] burns." (ECF #31-1, ¶ 4).

(6) Upon entering the jail she told the initial medical examiner "that [her] dressing needed

to be changed more than once per day and that [she] used pre-medicated dressing material. [She] also asked that [she] be housed in the Jail's medical unit" to lessen "the possibility of ... contracting an infection." (ECF #31-1, ¶ 5).

(7) She alleges that the medical staff at the jail "refused to change [her] dressings more than once per day, and refused to use pre-medicated dressing material." Further, they "initially... refused to assign [her] to the medical section." (ECF #31-1, ¶ 5).

(8) "Almost immediately after [her] incarceration began" she began to have "pain, pus, and other symptoms of infection around the site of [her] burns." These symptoms became progressively worse as the staff continued to refuse to adhere to her requests relating to the dressing of her burns. (ECF #31-1, ¶ 6).

(9) When her symptoms got worse, she was moved to the medical unit, where there was, "in close proximity" an inmate with "an obvious and serious staph infection." (ECF #31-1, ¶ 7). Despite her requests to be "moved from the proximity" of the infected inmate, the staff refused to move her. (ECF #31-1, ¶ 7).

(10) On August 2, 2010 she was transported to the Akron Children's Hospital where "an operation was performed to amputate the seriously infected pinky on [her] left hand."

(ECF #31-1, ¶ 8).

Ms. King has submitted no evidence, aside from her own affidavit, in support of her claims.

### **Analysis**

Plaintiff bears the burden of proving her claim for deliberate indifference by a preponderance of the evidence. She cites *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) for the proposition that she must prove two components in order to establish her claim. The first component required under *Quigley* is an objective element "satisfied by sufficiently showing a sufficiently serious condition that denial of needed medical care would result in the unnecessary and wanton infliction of pain or pose a substantial risk of serious harm." *Quigley* at 681. In addition, Plaintiff acknowledges that she must establish a subjective components of her claim, that being "that the defendant[s] [were] aware of facts from which the inference could be drawn that a substantial risk of harm would exist if needed care were not provided, that the defendant[s] actually drew the inference and that the defendant[s] acted in disregard of that risk." *Brennan v. Farmer*, 511 U.S. 825, 837 (1994).

The arguments in this case center around Ms. King's ability to prove that she was denied "needed care" as required under both components of her claim. Specifically, Defendants challenge her ability to prove that additional care was needed without some form of medical or expert testimony to show that additional care was "needed" and that the care provided by Defendants was not sufficient to avoid a "substantial risk of harm." Plaintiff contends that a jury could find her favor by finding, based on their common sense and experience, that (1)

substantial burns are a serious medical condition; (2) failure to treat serious burns will result in substantial pain and risk of future serious harm; and, (3) the medical staff at the jail denied specific requests made by Ms. King to protect her from "the worsening of her condition. Further, Plaintiff contends that a jury could reasonably infer from her affidavit that "proper treatment of [her] burns required changing her dressings more than once per day, and the dressing material should have been pre-medicated," and that exposing her to infected individuals "would be inimical to proper care and treatment for her burns." Finally, Plaintiff contends that no expert testimony is required to establish these inferences. Defendants, on the other hand, argue that Plaintiff's claim is tantamount to a medical negligence claim, and that "[f]ailure to establish the recognized standards of the medical community is fatal to the presentation" of such a claim. *See, Finley v. U.S.A.*, 314 F.Supp. 905, 911 (N.D. Ohio 1970). Because Plaintiffs have failed to provide any expert testimony relating to the appropriate standard of care, or the cause of Ms. King's infection and second amputation, Defendants contend that she cannot sustain her burden of proof at trial.

Under Ohio law, expert medical testimony is required in a medical negligence case to establish a failure on the part of a defendant physician to meet the standard of care, and to establish that such a breach actually caused the injuries sustained. *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 131-132 (1996). When some treatment has been rendered, as is un-disputed in this case, there is no substantive difference between the objective elements of a medical negligence claim and a deliberate indifference claim. In fact, it only makes sense that a deliberate indifference case should be harder to prove because it has a higher degree of intent or subjective culpability. Plaintiff has not claimed that no treatment was provided. She claims that the

treatment was not sufficient, or that the medical personnel were negligent in their assessment of what care she needed. Therefore, there is no legal or logical reason to distinguish between the type of proof needed to establish the medical necessity of Plaintiff's requested course of treatment in this "indifference" and the medical necessity of treatment in a negligence suit. Nor is there any way to avoid the necessity for expert medical testimony as to the cause of Plaintiff's injury.

Plaintiff is not qualified to establish what was medically necessary in the treatment of her burns. She never testified that the course of treatment she sought was actually deemed "necessary" or prescribed by a physician at the time she was admitted to the jail, although she claims is the treatment she was told to follow following her original amputation. Further, even if she had stated that this course of treatment was prescribed or deemed "necessary" by a physician that testimony would be hearsay. She is also not qualified to testify as to the cause of her second infection and resulting amputation. In fact, even if she were competent to testify to causation, her affidavit does not specifically assert the cause of her infection or the resulting amputation. Although she claims that she was placed near a staph infected inmate, she does not testify that she contracted a staph infection, nor that she came into direct contact with the inmate or any surface that may have been infected. Further, she indicates that she had symptoms that might suggest an infection prior to her placement near the infected inmate. She also testified that her first amputation occurred even while she was following the treatment program she requested of the jail.

Without expert medical testimony neither the Court nor any jury could determine whether the treatment she claims to have requested was medically necessary for the wounds she

-8-

suffered at the stage they were in when she was incarcerated. Further, without expert medical testimony, or any testimony from a treating physician, neither the Court nor any jury could find that a failure to properly dress her wounds, or her placement in the vicinity of other infected and non-infected inmates caused her subsequent infection and second amputation. This is especially true when the Plaintiff herself has testified that she had a prior diagnosis of osteomyelitis[1] that resulted in an amputation on the same hand, prior to her incarceration, and that this infection and amputation occurred even as she was following the treatment program she requested from the Defendants.

In conclusion, Plaintiff has presented insufficient evidence upon which a jury could find that she was denied medically "necessary" care, or that such denial caused the injuries set forth in her Complaint. Under such circumstances, Summary Judgment must be awarded to the Defendants.

---

[1] Although Ms. King testified I her affidavit that her osteomyelitis "was gone" prior to entering the jail, this is not a determination that she could make on her own. In so far as this is a conclusion communicated to her by her physician, the statement is hearsay and cannot be considered as admissible evidence.

**<u>Conclusion</u>**

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF #28) is GRANTED.   IT IS SO ORDERED.

                                               /s/ Donald C. Nugent
                                              DONALD C. NUGENT
                                              United States District Judge

DATED:   September 19, 2013